# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**THUAN MINH PHAM,**

      **Plaintiff,**

**v.**                                                    **Civil Action No. 5:16cv176**
                                                                **(Judge Stamp)**

**JENNIFER SAAD, Warden; BARBARA
WAGNER, Warden; MS. RICE, Chief of
Unit Management; MS. POTTER, Unit
Manager; and MS. K. KIRKLAND, Case
Manager,**

      **Defendants.**

## REPORT AND RECOMMENDATION

On November 28, 2016, the *pro se* Plaintiff, an inmate then-incarcerated at FCI Gilmer,[1]

in Glenville, West Virginia, initiated this case by filing a <u>Bivens</u>[2] civil rights complaint against

the above-named defendants, along with a motion to proceed as a pauper and a motion for

appointed counsel. ECF Nos. 1, 2, & 3. By separate Orders entered December 20, 2016, Plaintiff

was granted permission to proceed as a pauper and his motion for appointed counsel was denied.

ECF Nos. 9 & 10. Plaintiff paid his initial partial filing fee on January 3, 2017. ECF No. 12.

On March 15, 2017, Magistrate Judge James E. Seibert conducted a preliminary review

of the complaint, determined that summary dismissal was not warranted at that time and directed

the Defendants to answer the complaint. ECF No. 15. The Clerk of Court was directed to issue

60-day summonses and forward copies of the complaint to the United States Marshal Service to

effect service of process upon the Defendants. <u>Id.</u>   On May 3, 2017, the summonses for

---

[1] The docket indicates that Plaintiff is presently incarcerated at FCI Hazelton in Bruceton Mills, West Virginia.

[2] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

Defendants Potter, Kirkland, and Saad were returned executed.  ECF Nos. 21, 22, & 23.  That same day, the summonses for Defendants Wagner and Rice were returned unexecuted. ECF No. 24 & 25.

On May 17, 2017, the Defendants Saad, Potter, and Kirkland filed a Motion to Dismiss, or, Alternatively, for Summary Judgment, along with a memorandum in support, attaching certain exhibits.  ECF Nos. 27 & 28.  Because Plaintiff was proceeding *pro se*, a Roseboro Notice was issued on May 30, 2017.  ECF No. 29.  On June 8, 2017, Plaintiff filed his response in opposition, styled as a Motion to Hold 28 U.S.C. § 1331 Bivens Suit in Abeyance Pending 28 U.S.C. § 2241 Outcome.  ECF No. 33.

On June 29, 2017, Defendants Wagner and Rice filed a Motion to Dismiss, attaching affidavits and other documents, and a memorandum in support.  ECF Nos. 35 & 36. Because Petitioner was proceeding *pro se*, on July 5, 2017, another Roseboro Notice was issued. ECF No. 37.[3]

By Order entered September 15, 2017, this case was reassigned from Magistrate Judge James E. Seibert to the undersigned.

On November 6, 2017, Pham filed a "Supplement to Plaintiff's Petition for Federal Civil Rights Complaint (Bivens Action)" with numerous attachments. ECF No. 43.

This case is before the undersigned for review, Report and Recommendation pursuant to LR PL P 2.

## I. The Pleadings

### A. The Complaint

---

[3] A copy of that Roseboro Notice was sent to Plaintiff via certified mail, return receipt requested, at his last known address as reflected on the docket.  A review of the docket indicates that delivery of the same was accepted at FCI Gilmer on July 7, 2017. ECF No. 39.

In the complaint, Plaintiff, a Vietnamese citizen who contends he has a "non-deportable status," raises claims of Fifth and Fourteenth Amendment due process violations regarding his miscalculated custody classification as a deportable alien. ECF No. 1 at 7 and ECF No. 1-1. He requests relief pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 2243, 5 U.S.C. § 702, and the All Writs Act, 28 U.S.C. §1651, alleging that the Bureau of Prisons' ("BOP") actions have denied him eligibility for UNICOR work; wrongfully put a Public Safety Factor ("PSF") of "Deportable Alien" on his record, causing him to lose his UNICOR job in the prison; preventing him from eligibility for the Residential Drug Abuse Treatment Program ("RDAP"); barring him from early release to a Residential Reentry Center ("RRC")/Halfway House; and incarcerating him over five hundred miles away from his family. ECF No. 1 at 9.

The Plaintiff maintains that he has exhausted his administrative remedies with regard to his claims. Id. at 4 – 5. He attaches copies of his grievances; a copy of a PSF; a copy of 28 U.S.C. § 636; a copy of his Security/Designation Data; and what appears to be several unidentified incomplete excerpts from case law. See ECF No. 1-1.

As relief, Plaintiff seeks injunctive relief in the form of a directive from this Court to make the BOP remove the PSF from his record; transfer him to a minimum security prison closer to his family; permit him to participate in a RDAP program; permit him to be released to a RRC/Halfway house; and place him in a union work facility. Further, he seeks $250,000.00 "for punitive damages and mental anguish" from each of the named defendants. ECF No. 1 at 9 and ECF No. 1-1 at 1.

**B. Defendants Saad, Potter, and Kirkland's Motion to Dismiss or in the Alternative, Motion for Summary Judgment**

In their dispositive motion, Defendants Saad, Potter, and Kirkland allege that the case should be dismissed or summary judgment granted in their favor because:

3

1)  Plaintiff failed to administratively challenge his eligibility for prison employment before filing this case [ECF No. 28 at 6];

2)  even if all of Plaintiff's claims were administratively exhausted, his complaint fails to state a legally cognizable <u>Bivens</u> claim against Defendants Saad, Potter, and Kirkland [<u>id.</u> at 8];

3)  because Plaintiff fails to state viable constitutional claims, the Defendants are entitled to qualified immunity [<u>id.</u> at 10];

4)  the BOP has full discretion to classify inmates and federal inmates have no constitutional right to a specific custody classification [<u>id.</u> at 11];

5)  the BOP has extensive discretion to determine inmates' eligibility to participate in rehabilitative programs; Pham has no constitutional right to participate in RDAP and his assertion that he was precluded from doing so fails to state a constitutional claim [<u>id.</u> at 12];

6)  the BOP has broad discretion to decide where inmates will be incarcerated and federal inmates have no constitutional right to be incarcerated in a particular place, therefore, Pham's request to be transferred or released to a RRC or halfway house do not present constitutional claims [<u>id.</u> at 13];

7)  federal inmates have no constitutional right to employment and therefore, Pham's claim in this regard fails to state a viable <u>Bivens</u> claim [<u>id.</u> at 15]; and

8)  Plaintiff has not alleged that he suffered any physical injury, thus he is precluded from recovering damages for emotional distress.  <u>Id.</u> at 17.

## C. <u>Plaintiff's Response in Opposition</u>

In his response, styled as a "Motion to Hold 28 U.S.C. § 1331 Bivens Suit in Abeyance Pending 28 U.S.C. § 2241 Outcome," Plaintiff reiterates his arguments and attempts to refute Defendants Saad, Potter, and Kirkland's on the same, attaching a number of documents.  ECF No. 33 at 2 – 5; ECF No. 33-1; ECF No. 33-2; ECF No. 33-3; and ECF No. 33-4.  In response to their argument that he because he claimed no physical injury he cannot recover money damages for mental anguish alone, he contends that because he is not a citizen, "therefore this automatically becomes a Diversity Claim, with a minimum for jurisdictional reason, in Federal Court of $75,000.00 per person/claim.  This also becomes a Punitive Damages Claim, found on

the Circuit accepted multiplier of four (4) times the amount of Compensation, thus $300,000.00 per person/claim sought." ECF No. 33 at 1.

Further, he requests that that the instant Bivens action be placed in abeyance, explaining that

> the parallel case under 28 U.S.C. § 2241, in which their [sic] is overlapping discovery, testimonial affidavits and other evidence pertainent [sic] to this matter. Rather than confuse the issues on the introduction of the new evidence through the § 2241 matter, tying up Court time, monies and also resources better spent elsewhere until the § 2241 is resolved, abeyance is the better choice.

ECF No. 33 at 1. Plaintiff does not identify what "parallel" § 2241 action to which he is referring.[4] He avers that he "seeks hearing on the issues of his discriminatory execution of a simple Federal sentence to prison, and the Constitutional Right to Equal Treatment as other inmates." ECF No. 33-1 at 2.

### E. Defendants Wagner and Rice's Motion to Dismiss[5]

Defendants Wagner and Rice argue that the complaint should be dismissed for improper service of process, lack of personal jurisdiction, or alternatively, for failure to state a claim. ECF No. 35 at 1; see also ECF No. 36 at 3, 6, & 10. They each attach sworn, notarized affidavits,

---

[4] A search of the docket at the time Plaintiff filed this complaint revealed that he then had three pending § 2241 actions: Pham v Saad 2:16cv99 (JPB/MJA), filed the same day this case was filed, raising claims of ineffective assistance of counsel and challenging his enhanced sentence; Pham v Saad, 1:17cv65 (IMK/MJA), filed on April 24, 2017, raising claims regarding a disciplinary hearing; and Pham v Saad, et al., 3:17cv66 (GMG/RWT), filed on June 8, 2017, the same day he filed his motion to abey/Roseboro response in the instant action. In addition to naming Jennifer Saad, the Warden of FCI Gilmer, as a respondent in that action, Plaintiff also named Barbara Wagner & Ms. Rice, the same two employees of the Adams County Correctional Center ("ACCC") in Natchez, Mississippi that were named as defendants in this action. Further, the "petition" in that habeas action is the same document Pham filed as his motion to abey/Roseboro response here, sans the cover sheet used here; instead, there, Pham appended a different cover sheet, titled "Reply Brief and Motion to Change Designation to 28 USC 2241 challenge to the execution of a sentence," and (without explanation) references the "Government BOP Response Brief," filed in the instant Bivens action. Because this "petition" was not on a court-approved form, the Clerk of Court issued a Notice of Deficient Pleading/Notice of Intent to Dismiss, advising Pham that he was required to refile his pleading on a court-approved form § 2241 petition within thirty days. Pham refiled the case on June 26, 2017 on the proper forms; the case is now pending as Case No. 1:17cv111; Case No. 3:17cv66 was dismissed on August 9, 2017.

[5] Because Defendants Wagner and Rice have attached affidavits to their motion, it will be construed as one for Summary Judgment.

denying contact with the state of West Virginia at all times during their employment at ACCC and both aver that they are no longer employed at ACCC. See ECF No. 35-2 and ECF No. 35-3.

**E. Plaintiff's Response**

Plaintiff's untimely response in opposition[6] to Defendants Wagner and Rice's Motion to Dismiss, styled as "Supplement to Plaintiff's Petition for Federal Civil Rights Complaint (Bivens Action)," states that since he filed his "timely" response to the (first) Roseboro Notice, issued to advise him of his right to respond to Defendants Saad, Potter, and Kirkland's dispositive motion, "[n]o further action has been taken in the case with the exception of this Supplement[.]"[7] ECF No. 43 at 2.

He then goes on to raise new claims of retaliation, alleging first that the staff at FCI Gilmer and the staff at FCI Hazelton violated his right to the exercise of a constitutionally

_____

[6] In the Roseboro Notice advising Plaintiff of his right to respond to Wagner and Rice's dispositive motion, he was given twenty-one days to respond, or until July 26, 2017. He did not file his Supplement to Plaintiff's Petition for Federal Civil Rights Complaint (Bivens Action) until November 6, 2017.

[7] Presumably in purported support of this, Pham attaches a copy of the docket for a habeas action, also against Warden Saad, filed pursuant to 28 U.S.C. § 2241 in this district as Case No. 1:17cv65, showing that a June 20, 2017 Roseboro Notice was issued in *that* action, and as of the September 13, 2017 date that the copy of that docket sheet was printed, nothing further was docketed in *that case* other than communication between Pham and the Clerk. See ECF No. 43-1. It appears that Plaintiff may have confused the docket in that case for the docket in this one, understandable in view of the fact that a review of Plaintiff's filings in this district reveals that in the nine and a half months between November 1, 2016 and August 18, 2017, Plaintiff filed eight cases, including this one.

Because this statement by Pham impliedly asserts that he did not receive either a copy of Defendant Wagner and Rice's June 29, 2017 dispositive motion and memorandum in support [ECF Nos. 35 & 36] or the Court's July 5, 2017 Roseboro Notice [ECF No. 37], notifying him of it, despite the certificate of service on Wagner and Rice's dispositive motion showing a copy was sent to Pham, and despite the certified mail return receipt for the Roseboro Notice showing it was received at FCI Gilmer on July 7, 2017, two days after it was sent, on January 22, 2018, the *pro se* law clerk phoned FCI Gilmer's mail room and verified that Pham did indeed receive the second Roseboro Notice, advising him that Wagner and Rice had filed their June 29, 2017 dispositive motion.

The FCI Gilmer mail room staff scanned and sent the *pro se* law clerk a page from its mail room log book, (attached here as Exhibit One), showing that in keeping with FCI procedure, Pham's counselor picked up the certified mail on July 7, 2017 at around 11:10 am and again at 1:15 p.m., which included not only the July 5, 2017 Roseboro Notice, but also a mailing from Zimmer Kunz, the firm that represented Wagner and Rice (and who sent the June 29, 2017 Motion to Dismiss with its memorandum in support which apparently arrived the same day as the Roseboro Notice), and that the counselor took both pieces of certified mail to Pham's unit, where Pham himself signed an FCI Gilmer "Log," (attached here as Exhibit Two) to show that he had received two pieces of certified mail that day. Copies of both log book pages are attached to this Report and Recommendation as Exhibits One and Two.

protected activity by transferring him to FCI Hazelton in retaliation for his having filed the instant civil rights action.  Id. Second, he alleges that since he filed suit, once he arrived at FCI Hazelton, the FCI Hazelton staff put a Management Variable ("MGTV")[8] on him for exercising his constitutional right to file this lawsuit.   ECF No. 43 at 3. Third, he alleges that he after he arrived at FCI Gilmer on September 29, 2017 from ACCC, a "lower Federal Prison," his Greater Security Management Variable (for having been found guilty by a Disciplinary Hearing Officer ("DHO") for a "shot" for having committed "Incident Report of Code: 108")[9] should have been "taken off," because the shot, which raised his "level 13 to 21," got expunged on July 24, 2017. Id. at 3.

In support of all of this, Pham attaches two BOP Male Custody Classification Forms, related to how his disciplinary action "shot" affected his custody level score [ECF No. 43-2 & ECF No. 43-3]; excerpts from a copy of Defendants Saad, Potter, and Kirkland's memorandum in support of their dispositive motion [ECF No. 43-4 at 2 – 4, ECF No. 43-6 at 2 – 3]; a copy of a January 2, 2014 "Program Review Report" from ACCC [ECF No. 43-4 at 5 – 7]; copies of two October 20, 2017 inmate "Request to Staff" regarding the "Greater Security Management

---

[8] See BOP PS 5100.08, Ch. 2, p. 3:

> MANAGEMENT VARIABLE. A Management Variable (MGTVs) reflects and supports the professional judgment of Bureau staff to ensure the inmate's placement in the most appropriate level institution. A Management Variable(s) is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's security score — a score which may not completely/accurately reflect his or her security needs.

[9] Per BOP PS 5270.09, Ch. 5, p. 44, an Incident Report Code 108 is issued for:
> Possession, manufacture, introduction, or loss of a hazardous tool (tools  most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia,  portable telephone, pager, or other electronic device).

Variable" that was placed on him, changing his custody level score [ECF No. 43-5 at 2 & 3]; and a copy of another BOP Male Custody Classification form.  ECF No. 43-7 at 2.

### III. <u>Standard of Review</u>

#### A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1356 (1990). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts have long cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitled him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>id.</u> (citations omitted), to one that is "plausible

on its face," id. at 570, rather than merely "conceivable," Id. Therefore, in order for a complaint to survive a dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim had facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of

whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 447 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

### IV. Analysis

### A. Adams County Correctional Center Employees

Plaintiff includes as defendants in this action Barbara Wagner, Warden of the ACCC in Natchez, Mississippi, and Ms. Rice, Chief of Unit Management at ACCC. The ACCC is owned and operated by the Corrections Corporation of America, under contract with the BOP. It specializes in housing illegal immigrants who have been charged with serious crimes or who have been deported, and have illegally re-entered the United States.[10]   The ACCC is in the Southern District of Mississippi.

For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. Of Dirs. Of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). The West Virginia long-arm statute is contained in W.Va. Code § 56-3-33(a).[11]

---

[10] See Adams County Correctional Center, *available at:* http://www.prisonpro.com/content/adams-county-correctional-center

[11] This section provides as follows:
(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of the subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:
    (1) Transacting any business in this state;
    (2) Contracting to supply services or things in this state;
    (3) Causing tortious injury by an act or omission in this state;
    (4)Causing tortious injury outside this state if he or she regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
    (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state; Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
    (6) Having an interest in, using or possessing real property in this state; or
    (7)Contracting to insure any person, property or risk located within this state at the time of contracting.

The Southern District of West Virginia has succinctly stated the following regarding personal jurisdiction:

> "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction.  Rather the statutory inquiry necessarily merges with the Constitutional inquiry.  In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997).
>
> To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interest here would not "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful").   This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed. 2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476, 105 S.Ct. 2174.

Vass v. Volvo Trucks North America, Inc., 304 F. Supp.2d 851, 854 (S.D. W.Va. 2004).

With regard to the actions of Defendants Wagner and Rice, who are both ACCC personnel, Plaintiff has failed to assert any contact by them with the State of West Virginia, much less the minimum contact necessary to satisfy the Due Process Clause.

In his motion to hold this Bivens action in abeyance/response in opposition to Defendants Saad, Potter and Kirkland's dispositive motion,[12] Plaintiff notes Saad, Potter, and Kirkland's statement regarding Wagner and Rice not being BOP employees and that therefore, their

---

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivision (1) through (7), subsection (a) of this section may be asserted against him or her.

[12] Plaintiff's only "response" filed after he received a copy of Defendants Wagner and Rice's June 29, 2017 dispositive motion and the July 5, 2017 Roseboro Notice advising him of the same, was his untimely "Supplement," filed on November 6, 2017, wherein he raised new claims of retaliation and made no mention of the arguments raised in Wagner and Rice's dispositive motion.

response was not being filed on Wagner and Rice's behalf, Plaintiff, referencing Wagner and Rice, asserts that "*since neither party is any longer employed therein [at ACCC], and no forwarding address is available[] [t]he remaining parties, (3) three of them, we will pursue.*" ECF No. 33 at 2 (emphasis added). He attaches copies of the Process Receipt and Returns for Wagner and Rice, showing that neither of them were employed any longer at ACC and that there were no forwarding addresses for either. See ECF No. 33-4 at 2 – 3.

Both Wagner and Rice have produced sworn affidavits attesting to their residence as citizens of Mississippi at all times during their employment with ACCC; Rice denies ever having been a resident of West Virginia [ECF No. 35-3] and Wagner indicates that she lived in Morgantown, West Virginia between 1980 – 1984, well before her employment at ACCC and has not resided there since.[13] ECF No. 35-2.

Thus, based on the information contained in the complaint, the Court cannot exercise personal jurisdiction over any personnel at ACCC, because any action they took appears not to have occurred anywhere in West Virginia, and there is no indication that these defendant had any contact with the State of West Virginia. Accordingly, both Defendants Wagner and Rice should be dismissed without prejudice as defendants in this matter. Further, it is apparent from Pham's statement regarding the failure to effectuate service on these two defendants, that he concedes to their dismissal from this action.

## B. <u>Exhaustion of Administrative Remedies</u>

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in §

---

[13] Both also deny having been served with a summons and complaint in this action.

1997(e)(a) is mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). A <u>Bivens</u> action, like an

action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. <u>Porter v.</u>

<u>Nussle</u>, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all

inmate suits about prison life, whether they involve general circumstances or particular

episodes,"[14] and is required even when the relief sought is not available. <u>Booth</u>, at 741. Because

exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior

to filing a complaint in federal court. <u>See</u> <u>Porter</u>, at 524 (citing <u>Booth</u>, 532 U.S. at 741)

(emphasis added).

Moreover, in <u>Woodford v. Ngo</u>, 548 U.S. 81, 84 - 85 (2006), the United States Supreme

Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to

"eliminate unwarranted federal court interference with the administration of prisons;" (2) to

"afford corrections officials time and opportunity to address complaints internally before

allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality

of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper

exhaustion." <u>Woodford</u>, at 92 - 94 (emphasis added). Full and proper exhaustion includes

meeting all the time and procedural requirements of the prison grievance system. <u>Id.</u> at 101-102.

The Bureau of Prisons provides a four-step administrative process beginning with

attempted informal resolution with prison staff (BP-8). <u>See</u> 28 C.F.R. § 542.10, *et seq.* If the

prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-

9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an

inmate is not satisfied with the warden's response, he may appeal to the regional director of the

BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no

---

[14] <u>Porter</u>, 534 U.S. at 524.

satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[15] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it is not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint.  See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 681 – 82 (4th Cir. Va. 2005).

Under §1997e(a), the exhaustion requirement depends on the "availab[ility]" of administrative remedies: An inmate must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).  For example, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use, such as when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859. Or, a remedy might be rendered unavailable because prison administrators thwart inmates from taking advantage of it "through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860.

---

[15] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017)(quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Here, Plaintiff's complaint asserts that he exhausted his administrative remedies on his claims by filing grievances at all three levels. ECF No. 1 at 5.  In support, he attaches copies of a January 13, 2014 "second request" to "transfer to a BOP facility – Non-deportable Citizen of Vietnam," requesting that the BOP reclassify him by removing the PSF of Deportable Alien, alleging that the PSF prohibits him from: being placed in a minimum security prison; participating in RDAP; prohibits his early release to a RRC; and because ACCC "is considered an Immigration Hearing Site . . . and/or Release Site (inmate with orders of deportation), [it] prohibits him from being transferred to a facility closer to his family.  ECF No. 1-1 at 25.

Plaintiff also attached what appears the second page of an "Informal resolution outcome – unresolved," showing that the "Staff response" was that Pham was advised that "this issue could not be resolved at my level," and was dated and signed by two staff members on January 13, 2014, with a notation that "inmate refused to sign." Id. at 26.

Next, Plaintiff attached a January 21, 2014 Grievance Response: Subject: Inmate/Resident Grievance 014-1404-0006,  "in response to the Inmate/Resident Grievance dated January 13, 2014 and received in this office on the same date," noting that  Plaintiff had submitted an informal resolution to his unit staff, requesting the BOP remove his PSF of "Alien." The response stated in pertinent part:

> The record indicates you have a . . . (PSF) of alien. Bureau of Prisons PS 5100.08 Inmate Security Designation and Classification states "a PSF of alien will be applied for a male or female inmate who is not a citizen of the United States. All long-term detainees will also have this PSF applied.  When applied, the inmate or

long-term detainee will be housed in at least a low security level institution.  The PSF will not be applied or removed until US Immigration and Customs Enforcement (ICE) or the Executive Office of Immigration Review (EOIR) has determined that deportation proceedings are unwarranted or there is a finding not to deport the inmate at the completion of the deportation proceedings".  [sic] You are classified as a low security level inmate designated to the appropriate facility consistent with policy and commensurate with your security needs.  Therefore, until ICE or the EOIR have determined you will not be deported, the PSF of alien will not be removed.  Based on this information, you are ineligible for pre-release or home detention.

If you are not satisfied with this response, you may submit an appeal to the Warden . . .

Id. at 27. On February 11, 2014, Pham responded, pointing out that the Unit Manager and the Warden[16] may have overlooked the Immigration Judge's Order establishing the Department's position regarding his "non-deportable status," and again requesting that the BOP remove his PSF of "Deportable Alien" and transfer him to a facility where he could receive the rights and benefits of inmates without such a PSF.  Id. at 18. Plaintiff also attaches a February 21, 2014 Regional Administrative Remedy Appeal 768694-Rl, Part B Response, regarding his request that the PSF of Alien be removed and that he be transferred to a different facility where he could receive the same rights and benefits afforded to inmates without such a PSF; the appeal was denied and he was advised to appeal to the Office of General Counsel within 30   calendar days. Id. at 28.

Next, Plaintiff attaches a March 10, 2014    Remedy ID No. 7689_4 (illegible); in the top section designated for "reason for appeal," Pham wrote "see the attached," (there is nothing attached); at the bottom, in the section designated for the general counsel's response, although it is stamped "received" twice, once on March 18, 2014 and again on May 7, 2014, there is no response. ECF No. 1-1 at 15.

---

[16] A review of Plaintiff's Administrative Remedy Generalized Retrieval indicates that as of February 19, 2014, Plaintiff was still incarcerated at ACCC in Natchez, Mississippi.  See ECF N. 28-1 at 146.

Plaintiff next attaches an August 20, 2015 response from the Administrator – Appeals (part of the response is cut off) on Remedy ID No. 768694-A2, regarding his appeal of the Deportable Alien PSF applied to his custody classification, and noting that staff had not ignored the Immigration Judge's Order regarding his non-deportable status; that records indicate he currently had no immigration detainers; but that because he was a citizen of Vietnam and had not been naturalized as a U.S. citizen, the Deportable Alien PSF was appropriately applied. Further, it noted that he was "currently in holdover status awaiting transfer to a facility with greater security following your receipt of a Greatest severity _ [cut off]   prohibited act at the previous prison." Id. at 17. The outcome of the appeal was not apparent from the copy because it appeared that a "post-it" note was affixed over that area during the copying. Id.

Plaintiff also provides a December 29, 2015 BP-8 informal resolution form, asking that the BOP remove the PSF of Alien from his file.  Id. at 11.

Next, Plaintiff attaches a January 14, 2016, BP-9 Request for Administrative remedy, appealing the BP-8 decision regarding his PSF, again arguing that he was non-deportable, again referencing again the Declaration of Matthew Reaves, Supervisory  Detention and Deportation Officer (ICE) that a determination in accordance with Program Statement 5100.08 indicated that deportation proceeding were unwarranted  and that the PSF should be removed. Id. at 12. Pham again argued that the PSF prejudiced his ability to participate in a RDAP and prevented his release to a RRC. ECF No. 1-1 at 29.

Plaintiff next attaches a February 17, 2016 Warden's response to his BP-9, Remedy ID No. 849430-F1, (the BP-9 was apparently filed on January 25, 2016,  but Plaintiff did not provide a copy of the BP-9 itself) regarding Pham's request to have his "Alien" PSF removed, and advising that the  Correctional Systems Department had sent a Detainer Action Letter to the

Bureau of Immigration and Customs Enforcement on October 27, 2015, but that as of that time, no answer had been received; thus, Pham's PSF of "Alien" would  remain in place until a response was received.  Relief was denied.  ECF No. 1-1 at 16.

Finally, Plaintiff attaches a copy of a March 31, 2016 Remedy ID No. 849430-R1 Regional Administrative Remedy Appeal, denying his appeal, again advising that a Detainer Action Letter had been sent to ICE on October 27, 2015; that no response had yet been received; the PSF would remain on his Custody Classification until an answer was received; and denying his appeal.  He was advised to appeal to the Office of General Counsel within 30 days if dissatisfied with the response. ECF No. 1-1 at 14.

In their memorandum in support of their dispositive motion, Defendants Potter and Kirkland assert the affirmative defense that Plaintiff filed suit without first fully exhausting his administrative remedies on all of the claims in his complaint, as required by the PLRA. ECF No. 28 at 2.  In support of their argument, they produce the sworn declaration of Defendant Lisa Potter ("Potter Decl."), Bureau of Prisons ("BOP") Plaintiff's Unit Manager at FCI Gilmer.  See ECF No. 28-1 at 1 – 6. Specifically, they aver that Plaintiff was placed into BOP custody on October 24, 2005.  Id., ¶ 6 at 2.  Further, they assert that Plaintiff has filed twenty-eight BOP administrative grievances since being placed in BOP custody. Id., ¶ 21 at 5. Twenty-two of the grievances involve matters unrelated to the claims in his complaint.  Id. Pham has filed six grievances over the Deportable Alien PSF.  Id., ¶ 22 at 5. He administratively challenged his PSF as a Deportable Alien; his request to be transferred to a correctional facility closer to his family; and his claim that the Deportable Alien PSF precludes his participation in RDAP and/or being transferred to an RRC. Id., ¶ 22 at 5 - 6. Pham's initial administrative challenge to the Deportable Alien PSF, grievance #768694-R1, was denied. Id. ¶ 23 at 6. Pham unsuccessfully appealed his

grievance to the BOP General Counsel via grievances # 768694-A1 (rejected) and # 768694-A2 (denied). Id. He again administratively challenged the Deportable Alien PSF using grievance # 849430-F1, which was denied. Id., ¶ 24 at 6. Pham unsuccessfully appealed his grievance to the BOP Regional Director for the Mid-Atlantic Regional Office using grievance #849430-R1 (denied) and to the BOP General Counsel using grievance # 849430-A1 (closed). Id. Therefore, these claims are exhausted. ECF No. 28 at 7. However, Pham has never administratively challenged his eligibility for prison employment. ECF No. 28-1, ¶ 25 at 6.

In his response in opposition, Plaintiff makes an unclear argument that exhaustion is not required where it would be futile. ECF No. 33 at 2. He reiterates his arguments about his PSF and the fact that he is non-deportable because Viet Nam will not take him back. ECF No. 3. He then reiterates his argument about being denied employment because of his nationality, without offering any explanation as to why he did not attempt to exhaust that particular claim. Id. at 4.

Accordingly, despite Plaintiff's claim in his complaint that he exhausted his administrative remedies on all of his claims, it is apparent from a thorough review of the record that while Plaintiff did exhaust his claims regarding his "Deportable Alien" PSF, his request to be transferred to a correctional facility closer to his family; and his claim that the Deportable Alien PSF precludes his participation in RDAP and/or being transferred to an RRC, he never even initiated the grievance process regarding his claim of being denied prison employment before he filed suit. Further, his response in opposition conspicuously fails to address the fact that he did not do so.

The undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may

be excused in certain limited circumstances.  See Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d at 725.

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable.  See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir. 2004).  But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Regarding Plaintiff's claim of having fully exhausted all of his claims, the record confirms that Plaintiff only did so with regards to all of his claims except for his employment claims.

The Defendants have produced the sworn declaration of Defendant Lisa Potter on the matter; the Plaintiff has not provided the Court with anything to refute this sworn declaration. Generally unsworn statements without more are not admissible on summary judgment to contradict sworn affidavits. Edens v. Kennedy, 112 Fed. Appx. 870, 877 (4th Cir. 2004) citing Scott v. Edinburg, 346 F.3d 752, 759 (7th Cir. 2003) and Provident Life & Accident Ins. Co. v. Goel, 274 F.3d 984, 1000 (5th Cir. 2001). Further, it is apparent from a careful review of the record, including a copy of the Plaintiff's Administrative Remedy Generalized Retrieval produced by Potter and Kirkland, that summarizes all of the administrative grievances Plaintiff has filed since his October, 2005 placement into BOP custody [see ECF No. 28-1 at 2], that Plaintiff is well-acquainted with the grievance process' requirement of the need to exhaust each claim and to complete exhaustion at each level before proceeding to the next. Therefore, the undersigned finds Plaintiff's bare allegation that he exhausted *all* of his claims lacks credibility. Moreover, Plaintiff makes no claim that Defendants or any other prison official ever threatened him with violence to discourage him from administratively exhausting his employment claims.

Accordingly, consistent with Custis v. Davis, Plaintiff has had the opportunity to address the issue and the undersigned still finds that his failure to exhaust his employment claims cannot be excused, and therefore, only Plaintiff's claims regarding his Deportable Alien PSF, his request to be transferred to a correctional facility closer to his family; and his claim that the Deportable Alien PSF precludes his participation in RDAP and/or being transferred to an RRC will be given review.

## C. Custody Classification as a Deportable Alien and its Effect on Plaintiff's Place of Incarceration and Rehabilitative Options

### 1) Jennifer Saad, Warden of FCI Gilmer

Liability in a Bivens case is "personal, based upon each defendant's own constitutional

violations." <u>Truloch v. Freeh</u>, 2755 F.2d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, in order to establish liability in a <u>Bivens</u> case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. <u>See</u> <u>Zatler v. Wainbright</u>, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for violation of a constitutional right in a <u>Bivens</u> case. <u>Rizzo v. Good</u>, 423 U.S. 362 (1976).

Here, beyond naming her in the caption of the case in his complaint and identifying her as a party [ECF No. 1 at 2] whose position at FCI Gilmer was the "warden," Plaintiff never again mentions Warden Saad in his complaint.[17]   Accordingly, he has failed to identify any action taken by Defendant Saad that violated his constitutional rights, and therefore, Saad, as the Warden of FCI Gilmer, should be dismissed from this case.

## 2) **Defendants Potter and Kirkland**

In the complaint, Plaintiff admits that he is a Vietnamese citizen, but argues that the PSF as a "Deportable Alien" is improperly applied to him, because he is "non-deportable," on the basis of

> the attached Declaration of Matthew Reaves, Supervisory Detention and Deportation Officer ICE Enforcement and Removal Operation of Jena LA . . . states that he is familiar with the facts and circumstances of . . . Pham's immigration status and that a determination in accordance with Program Statement 5100.08, that deportation proceeding[s] are unwarranted and that there are no findings to deport Pham.

---

[17] To the extent that the plaintiff may be asserting that Defendant Saad was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a claim. See <u>Paige v. Kuprec</u>, 2003 W.L. 23274357 *1 (D. Md. March 31, 2003).

ECF No. 1-1.  Despite Plaintiff's claim to the contrary, the Reaves Declaration is not attached to the complaint.[18]  Further, Plaintiff asserts that the BOP "was provided [with] a copy of the Immigration Judge order. Which [sic] clearly states that there the detainer in which was lodged against me, was canceled []and This [sic] was no longer a Deportable [sic] inmate." ECF No. 1-1 at 4.   Plaintiff contends that while "wrongfully" classified with a PSF of "Deportable Alien" his participation in re-entry and self-help programs such as RDAP and RRC is restricted and he is incarcerated over 500 miles from his family.  He contends that Defendants Potter and Kirkland were both in a "Supervisor position to correc[t] the error[]s in which was [sic] clearly made by this Plaintiff['s] Unit Team." ECF No. 1 at 3 & 4.

Plaintiff contends his miscalculated custody classification violates his Fifth and Fourteenth Amendment rights to due process. ECF No. 1 at 7 and ECF No. 1-1. He requests relief pursuant to 28 U.S.C. § 1331; Issuance of writ; return; hearing; decision (on habeas

---

[18] However, Plaintiff does attach a copy of the September 30, 2014 Reaves Declaration to his <u>Roseboro</u> response/Motion to Hold . . . <u>Bivens</u> in Abeyance Pending 28 U.S. § 2241 Outcome.  It states in pertinent part:

> 3. Based on my work as the Supervisory Detention and Deportation Officer in Jena, Louisiana, I am familiar with the facts and circumstances of Thin Minh Pham's ("Pham") Immigration status and deportation history.

> 4. On December 30, 1998, the Immigration Court in Huntsville, Texas entered .an order of deportation against Pham. Immigration and Customs Enforcement was unable to deport Pham to Vietnam or find a country that would receive Pham within the ninety-day detention time frame set forth in 8 U.S.C. § 1231. As a result, Pham was released from detention subject to an order of supervision that required Pham to appear regularly for meetings with a deportation officer.

> 5. On November 9, 2012, Pham's order of supervision was cancelled, and Pham was designated as a fugitive alien, because he failed to report for a number of years.

> 6. In cases where an alien is in custody serving time for a state or federal crime, ICE lodges detainers against the alien to notify the custodial agency that the alien/inmate may be deportable or is subject to an order of deportation.  ICE field offices prioritize detainer and deportation cases based on an alien's projected release date.  ICE has not yet lodged a detainer against Pham with the Federal Bureau of Prisons.

ECF No. 33-3 at 1.

actions) 28 U.S.C. § 2243; the Administrative Procedure Act, 5 U.S.C. § 702; and the All Writs Act, 28 U.S.C. §1651.

Relying on Supreme Court precedent, Defendants Potter and Kirkland argue that Pham's custody classification claim does not raise a cognizable Bivens claim because prison administrators have comprehensive discretion to control a prisoner's security classification. See Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976). Moreover, a federal inmate's challenge to his security classification cannot support a viable Bivens claim because a federal inmate has no constitutional right to any particular custody classification. Grayson v. BOP, No. 5:11cv2, 2011 WL 7154384 at *5 (N.D. W.Va. July 22, 2011) *Report and Recommendation adopted by* Grayson v. BOP, 2012 WL 380426 (N.D. W.Va. Feb. 6, 2012). Further, they argue that Pham's claim regarding why he was classified as a Deportable Alien is factually incorrect, because a Deportable Alien status is completely unrelated to whether an inmate can be removed from the United States and returned to Vietnam; it is merely applied to any federal inmate who is not a U.S. citizen. ECF No. 28 at 12.

In response, Pham cites to the January 2008 Vietnam – U.S. Agreement on the Acceptance of the Return of Vietnamese Citizens, a copy of which he attached to his response, along with a Statement from the Embassy of the Socialist Republic of Vietnam,[19] arguing that because he entered the United States before 1985, this agreement does not apply to him. See ECF No. 33-2 at 1 -5. The Vietnamese Embassy statement states in pertinent part that:

> . . . the agreement, signed on January 22 2008 by Vietnamese Vice Minister for Foreign Affairs Dao Viet Trung and US Assistant Secretary of Homeland Security Julie Myers, *covers people who are citizens of Vietnam and* are not citizens of the US or of any other countries; previously resided in Vietnam and have no current residence in a third country; *violated U.S. laws and received deportation order by U.S. competent authority; complete imprisonment for*

---

[19] *This statement is available at* < http://vietnamembassy-usa.org/relations/vietnam-us-agreement-acceptance-return-vietnamese-citizens >

> *convicted criminal offenses. The agreement is not applicable to citizens of Vietnam who entered the US before July 12 1995, the date of the establishment of diplomatic relations between Vietnam and the US.* Repatriation will be implemented in an orderly and safe manner, in line with U.S. laws, international laws and items in this agreement, taking into account humanity, family unity and specific circumstances of each individual returnee, with dignity of the returnees respected.

ECF No. 33-2 at 1 (emphasis added). Pham references ¶¶ 4 – 5 from the Reaves Declaration, *supra*, in support of his claim that he is not deportable because Vietnam would not accept him back in 1998, arguing that he is "no more 'deportable' today then [sic] he was back then . . . [and that] Vietnam, China, Russia, Grenada and Venezuela do not accept deportees from the United States." ECF No. 33 at 3. He contends that "Pham is so non-'Public Safety Factor' risk, that Pham was released to the streets after the [previous] failure to make him deportable." Id. Pham also cites to Galvez v. Lewis, 56 F.Supp.2d 637 (E.D. Va. 1999) (citing Tam v. Reno, 1999 U.S. Dist. LEXIS 3577, No. C-98-2835 MHP, 1999 WL 163055 (N.D. Cal. Mar. 22, 1999) (detainee was prohibited from returning to Vietnam because of circumstances beyond his control); Okeke v. Pasquerell, 80 F.Supp.2d 635 (5th Cir. 2000)(for the proposition that "Vietnam would not take them back."); Lieu v. Fed. Det. Ctr. Oakdale, 2013 US Dist. LEXIS 182464 (W.D. La. Dec. 16, 2013) *Report and Recommendation adopted by* Lieu v. Fed. Det. Ctr. Oakdale, 2014 U.S. Dist. LEXIS 1065 (W.D. La., Jan. 6, 2014); Duong v. Martin, 2014 US Dist. LEXIS 57927 (S.D. Miss. Apr. 7, 2014) *Report and Recommendation adopted by* Duong v. Martin, 2014 U.S. Dist. LEXIS 57928 (S.D. Miss., Apr. 25, 2014), all of which he contends "discuss[] the fact that Vietnamese citizens who . . . entered the US prior to 1995" could not return. ECF No. 33-2 at 1.

The BOP is responsible for determining the classification and placement of prisoners, 18 U.S.C. § 3621, and has promulgated policies and procedures to guide it in carrying out that

mandate.[2] Policy Statement ("PS") 5100.08 addresses inmate security classifications and custody designations, including the use of PSFs. Public Safety Factors[3] are designations that account for "certain demonstrated behaviors which require increased security measures to ensure the protection of society." PS 5100.08, Ch. 2, p. 4. A PSF "H" of deportable alien requires that, at a minimum, the inmate be housed in a Low security level institution. PS 5100.08, Ch. 5, p. 9. Initial designations to BOP institutions are initiated, in most cases, by staff at the Designation and Sentence Computation Center in Grand Prairies, Texas. There, staff assess and enter information from the sentencing court, U.S. Marshals Service, U.S. Attorneys Office or other prosecuting authority and the U.S. Probation Office about the inmate into a computer database known as SENTRY. SENTRY then calculates a point score for that inmate which is then matched with a commensurate security level institution. PS 5100.08, Ch.1, p. 2.

The Deportable Alien Public Safety Factor is applied to any "male or female inmate who is not a citizen of the United States." PS 5100.08, Ch. 5, p. 9. This PSF is not removed unless ICE or the Executive Office for Immigration Review ("EOIR") determines that "deportation proceedings are unwarranted or there is a finding not to deport at the completion or deportation proceedings." PS 5100.08, Ch. 5, p. 9. The Deportable Alien PSF would also be removed if the inmate is "naturalized as a United States citizen." Id. Pursuant to BOP policy, each inmate's custody classification is reviewed annually, with the inmate's unit team and/or Warden being the final review authority. P.S. 5100.08, Ch. 6, pp.1-2. The intent of the Custody

---

[2] The BOP's Program Statements are found at *www.bop.gov/Resources/policy_and_form.jsp*

[3] The PSFs are identified by letter and include: A-None; B-disruptive group (males only); C-greatest severity offense (males only); F-sex offender; G-threat to government official; H-deportable alien; I-sentence length (males only); K-violent behavior (females only); L-serious escape; M-prison disturbance; N-juvenile violence; O-serious telephone abuse.

Classification System is to permit staff to use professional judgment within specific guidelines. Id.

Here, the record indicates that BOP staff used their professional judgment when designating Petitioner as a deportable alien custody level inmate in October 2005. This classification was based on his Vietnamese citizenship. See ECF No. 28-1 at 69. Subsequently, on December 15, 2016, the United States Department of Homeland Security ("DHS") issued an Immigration Detainer for Pham and asked the BOP to transfer Pham into the custody ICE custody when he completes his federal sentence. See ECF No. 28-1 at 67; see also Pham's Sentence Monitoring Computation Data, ECF No. 28-1 at 10. Specifically, the Immigration Detainer notes that there is probable cause that Pham is a removable alien based upon a final order of removal against Pham. See Immigration Detainer, ECF No. 28-1 at 67. Because Pham's inmate file reveals no information to suggest that he has become a naturalized U.S. citizen or that ICE has decided not to deport him, his Deportable Alien PSF has not been removed. See Potter Decl., ECF No. 28-1, ¶ 13 at 3.

Even if the Court found that the Plaintiff's custody level was incorrect, such an error does not rise to the level of a due process violation. An inmate does not have a constitutional right to be placed in a specific security classification, and custodial classifications do not create a major disruption in a prisoner's environment." Sandin v. Connor, 515 U.S. 472 (1995). Posey v. Dewalt, 86 F.Supp.2d 565, 571 (E.D. Va. 1999); Grayson v. Federal Bureau of Prisons, supra at 2011 WL 7154384 *3, Report and Recommendation adopted by Grayson v. BOP, 2012 WL

380426 (N.D. W.Va. Feb. 6, 2012).  Instead, security classification is reserved to the sole discretion of prison officials.[20] See Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994).

To the extent that the Plaintiff alleges that his "Deportable Alien" PSF custody classification has prevented him from being housed at lower-security institutions or barring him from participating in certain rehabilitation programs, the same fails to state a ground for relief. Title 18 U.S.C. § 4081 not only gives prison officials full discretion to determine prisoner classification but also eligibility for rehabilitative programs in the federal system. An inmate has no constitutional entitlement to rehabilitative programs, and the denial of access to them does not rise to the level of a due process violation. Moody, 429 U.S. at 88 n.9. Therefore, the fact that an

---

[20] Nonetheless, as the government noted, Pham's Deportable Alien PFS is a separate issue from whether he can be removed from the United States and returned to Vietnam; the BOP applies such a PFS to any federal inmate who is not a U.S. citizen. The 2008 U.S./Vietnam agreement to repatriate Vietnamese nationals recognized that "[a]nother reason for the inability to deport someone may be the lack of a diplomatic agreement with a specific country on the return of that country's citizens. In 2008, for example, the United States entered into an agreement with Vietnam for deportation of Vietnamese nationals." See Polly J. Price, Stateless in the United States, 46 Vand. J. Transnat'l L. 443, Apr.11, 2013, available at: < https://www.vanderbilt.edu/wp-content/uploads/sites/78/Price-FINAL.pdf >

Subsequently, a 2008 New York Times article commenting on the 2008 agreement between Vietnam and American immigration authorities, noted that "[u]nder a memorandum of understanding signed in Hanoi, Vietnam agreed to accept the return of those Vietnamese immigrants ordered deported by the United States, many of whom are convicted criminals[.] . . The agreement culminated 10 years of negotiations between the two countries[.] In all, about 8,000 Vietnamese immigrants in the United States are in deportation proceedings or have received final orders to be deported[.] Of those . . . about 7,000 have criminal convictions, including some 4,500 Vietnamese convicted of aggravated felonies. Only about 200 Vietnamese immigrants slated for deportation are in the custody of immigration authorities[.] Because of a Supreme Court ruling in 2001, the authorities have released immigrants under deportation orders after six months in detention if their countries would not accept them." Julia Preston, Vietnam Agrees to the Return of Deportees From the U.S., N.Y. Times, Jan. 23, 2008, available at: < http://www.nytimes.com/2008/01/23/us/23immig.html >

That Supreme Court case is Zadvydas v. Davis, 533 U.S. 678 (2001), which interprets 8 U.S.C.S. § 1231(a)(6), which authorizes the Attorney General in his sole discretion to detain a removable alien indefinitely beyond the 90-day removal period or only for a period reasonably necessary to secure the alien's removal, as containing an implicit "reasonable time" limitation of six months, the application of which is subject to federal court review. Zadvydas, supra at 701. However, after this six-month period, once an alien provided good reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future, then the government would be required to respond with evidence sufficient to rebut that showing. Id.  The Supreme Court noted that this six-month presumption does not mean that every alien not removed must be released after six months; rather, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. Id.

Likewise, here, while Pham has no constitutional right to have his Deportable Alien PFS removed, recognizing that he may be subjected to continued detention, should Vietnam refuse him reentry once he completes his sentence, that is an issue beyond his claims against the above-named defendants in these proceedings.

inmate cannot access certain rehabilitative programs such as RDAP or RRC does not constitute a due process violation. Wagoner v. O'Brien, 2012 WL 2924027 * 13 - 14 (N.D. W.Va. 2012). "Being classified "with a PSF of "deportable alien" and its resulting consequences of disqualification for certain programs, as with any other security classification, is not outside what a prisoner 'may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.'" See Becerra v. Miner, 248 Fed. App'x 368, 370 (3rd Cir. 2007) (citing Fraise v. Terhune, 283 F.3d 506, 522 (3rd Cir. 2002) and Moody, 429 U.S. at 88; Rublee v. Fleming, 160 F.3d 213, 214 (5th Cir. 1998)(Title18 U.S.C. § 3621 creates no constitutionally protected liberty interest in early release for completion of drug-abuse treatment); see also Wottlin v. Fleming, 136 F.3d 1032, 1037 (5th Cir. 1998) (early release not a "fundamental right").

To the extent that Plaintiff is attempting to assert an Equal Protection claim regarding being subject to restrictions to rehabilitative programs that other inmates are not subject to, such a claim fails, because he does not show that he is being treated differently from similarly situated persons, i.e., non-citizen prisoners, or that the restrictions on community-based treatment or early release are irrational. See Samaad v. City of Dallas, 940 F.2d 925 (5th Cir. 1991) (equal protection claim fails absent comparison to similarly situated others); Rublee, 160 F.3d at 214, 217 (flight risk is rational basis for ineligibility for community-based programs); Wottlin v. Fleming, 136 F.3d at 1037 ("rational basis" review of early-release claim).

Finally, Pham's claim that he is entitled to be transferred to a facility closer to his family, instead of "over (500) miles" away, fails to state a constitutional claim as well. This claim is construed as arising under BOP PS 5100.08, i.e., the "500 mile rule."[21] Federal courts have

---

[21] See BOP PS 5100.08, Ch. 5, p. 3, which states in pertinent part:

previously considered and rejected inmates' challenges to denials of requested transfer on the basis of the "500 mile rule." See Jordan v. Longley, 2008 U.S. Dist. LEXIS 115937, *6 (D.S.D. Aug. 28, 2008) *Report and Recommendation adopted by*, Jordan v. Longley, 2008 U.S. Dist. LEXIS 84075 (D.S.D., Oct. 20, 2008) (While § 3621(b) sets forth criteria for the BOP to use in making inmate placement determinations, the BOP may still establish rules and regulations to guide its administrators in transfer and placement requests [and] Program Statement 5100.08 establishes one such policy.); Williams v. Armontrout, 852 F.2d 377, 379 (8th Cir. 1988) (Neither § 3621(b) nor BOP PS 5100.08 create a constitutionally cognizable liberty interest). While § 3621(b)  contains "particularized substantive standards or criteria" to aid the BOP in determining which correctional facility is suitable for an inmate, it does not require the BOP to transfer an inmate to any particular facility and BOP PS 5100.08 merely set forth "the parameters of transfers." Williams, *supra* 852 F.2d at 379.   There is no procedural due process right to placement in a particular institution. See Newbold v. Stansberry, 2009 U.S. Dist. LEXIS 1941, *11 - 12 (E.D. Va. Jan. 12, 2009); Byers v. United States Dep't of Justice, 2008 U.S. Dist. LEXIS 73717, 2008 WL 4427935 *1 (E.D. Ky. Sept. 25, 2008)(§ 2241 petition challenging BOP decision under P.S. 5100.08 dismissed at screening because "prisoners lack any liberty interest protected by the Due Process Clause to placement in a particular institution); Olim v. Wakinekona, 461 U.S. 238 (1983)(a prisoner has no constitutional right to choose the particular correctional facility he wishes to be housed at or to be transferred to another facility upon request); Jordan v. Longley, 2008 U.S. Dist. LEXIS 115937, *5 (D.S.D. Aug. 28, 2008) *Report and Recommendation adopted by*, Jordan v. Longley, 2008 U.S. Dist. LEXIS 84075 (D.S.D.,

---

D. Release Residence.   The Bureau of Prisons attempts to place each inmate in an institution that is reasonably close to the anticipated release area.   Ordinarily, placement within 500 miles of the release area is to be considered reasonable, regardless of whether there may be an institution closer to the inmate's release area. This MGTV may also apply to inmates who are within 36 months of release.

Oct. 20, 2008)(same). Changes to a prisoner's location is a matter that "every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (holding that protected liberty interests are generally limited to freedom from restraint which imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life); Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (holding that a valid conviction "empower[s] the State to confine [an inmate] in any of its prisons"); Montayne v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) (holding that a mere transfer from one facility to another does not implicate the Due Process Clause, regardless of whether the transfer is the result of the inmate's misbehavior or is punitive in nature).

Finally, being located far from family is not an atypical or significant hardship. Deleston v. Rivera, 2011 WL 7040906, at *4 (D.S.C. Dec. 27, 2011), *Report and Recommendation adopted by* 2012 WL 135416, *aff'd* 474 F. App'x. 118 (4th Cir. 2012) (per curiam) (unpublished).

Therefore, the undersigned finds that none of Plaintiff's claims regarding his Deportable Alien PSF and its concomitant effects on his incarceration and rehabilitative options state a cognizable Bivens claim against these Defendants. Because it appears that no genuine issue of material fact exists with regard to these claims, summary judgment on the same should be granted for Defendants Potter and Kirkland.

**D. Retaliation: Retaliatory Transfer, Application of a Management Variable; and Failure to Correct Plaintiff's "Point Level" After an Incident Report was Expunged**

Plaintiff's untimely retaliation claims, raised for the first time in his November 6, 2017 "Supplement," over eleven months after he filed the instant Bivens action, are  new claims,

apparently arising out of his late August, 2017[22] transfer from FCI Gilmer to FCI Hazelton, the application of a Greater Security Management Variable he alleges was done to prevent him from being eligible for a lower-security institution, and the FCI Gilmer and FCI Hazelton's staff's failure to correct an increase in "points" after an Incident Report was expunged. See ECF No. 43 at 2 – 3.  All of these alleged acts occurred almost nine months after Plaintiff filed the instant complaint, and are unrelated to any of the claims in this Bivens action; moreover, they include claims not only against FCI Gilmer staff, but also against FCI Hazelton staff, who are not even named defendants in this action.   Accordingly, these claims will not be considered here.   If Plaintiff wishes to pursue these new claims, he must file a new Bivens complaint and pay the filing fee.

## V. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the Defendants Wagner and Rice's Motion to Dismiss, herein construed as a Motion for Summary Judgment [ECF No. 35] be **GRANTED** and Plaintiff's Complaint [ECF No. 1] be **DISMISSED without prejudice** as to them; Defendants Saad, Potter, and Kirkland's Motion to Dismiss or Alternatively, Motion for Summary Judgment [ECF No. 27] be **GRANTED** and that the Plaintiff's Complaint [ECF No. 1] be **DENIED** and **DISMISSED with prejudice** as to them.

Further, the undersigned recommends that Plaintiff's pending Motion to Hold 28 U.S.C. § 1331 Bivens Suit in Abeyance Pending 28 U.S.C. § 2241 Outcome [ECF No. 33] be **DENIED as moot.**

**Within fourteen (14) days after being served with a copy of the Report and Recommendation**, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such

---

[22] Plaintiff's Notice of Change of Address was filed on August 23, 2017. See ECF No. 41.

objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, at his last known address as reflected on the docket, and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

DATED: January 24, 2018

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE

34

EXHIBIT
NO. 1

**Please PRINT Clearly**

UN

| | DATE RECEIVED | TIME RECEIVED | NAME | REGULATION # | UNIT | SENDER'S NAME & ADDR |
|---|---|---|---|---|---|---|
| 1 | 6·28·17 | 3:00 pm | ▓▓▓▓▓▓ | ▓▓▓ | A1 | US District Court Eastern Dist, 231 West Lafayette Blvd. Room 718 |
| 2 | 6·28·17 | 3:00 pm | Harri, ▓▓▓ | ▓2 | A1 | Northern District of WV, 300 Third St. Room 207, Elkins WV |
| 3 | 6·30·17 | 11:00 | Re▓ ▓▓▓ | 37002-0▓▓ | A1 | John Carr Att, Charleston WV 2501 |
| 4 | 6·30·17 | 11:00 | ▓▓▓ | ▓▓ | A#2A | USDC North Court, Clarksburg 26302 |
| 5 | | | ▓▓▓ | ▓-17 | | AR▓ S85▓ |
| 6 | 6/30/17 | 11:00 | ▓▓▓ | ▓▓ | A3 | Law Office S. Miller, 8646 |
| 7 | 6/30/17 | 11:00 | ▓ Avery | ▓▓ | A2 | USDC North ▓▓, Clarksburg WV 2600 |
| 8 | 7/3/17 | 11:10am | ▓▓▓ | ▓▓▓ | A-2 | Petrick & Co. Miller Att, Bldg. Ave. 113 McKinley, ▓▓ C6089 |
| 9 | 7/3/17 | 11:10am | ▓▓▓ | ▓▓ | A-3 | Suzanne Lee Elliot Att, 1300 Hoge Bldg. 705 Seco, Seattle WA 98104 |
| 10 | 7/3/17 | 11:10am | ▓▓▓ | 201-▓▓ | A1 | Clerk US Dist Court, 500 West Pike St. Rm 301 F, Clarksburg WV 26302-2▓ |
| 11 | 7/3/17 | 11:10am | Pham, Thuan | 37209-172 | SHU/A3 | Zimmer ▓▓▓ Professional L company Attorneys at Law 1080 Morgantown WV 26505 |
| 12 | 7/7/17 | 1:15pm | Pham, Thuan | 37209-172 | SHU A3 | Northern District of WV ▓▓ US District Court P.O.▓ Wheeling WV 2600 |
| 13 | 7/10/17 | 10:30a | Rhodes Lett ▓▓ | ▓▓ | A3 | Michele Dur▓▓N Music City, Nashville |
| 14 | 7/10/17 | 10:30a | ▓▓▓ | ▓▓ | | |
| 15 | 7/10/17 | 10:30a | ▓▓▓ | ▓▓ | | |
| 16 | 7/10/17 | 10:30a | ▓▓▓ | ▓▓ | | Lu▓▓ ▓▓▓ Alexandria |
| 17 | 7/10/17 | 10:30a | ▓▓▓ | ▓▓ | | ▓▓▓ ▓▓▓ |
| 18 | 7/10/17 | 10:30a | O▓▓ | T▓ | A3 | No. Dist ▓▓ Richmond |
| 19 | 7/10/17 | 2:55 | ▓▓▓ | ▓▓ | | ▓▓▓ COV ▓ |
| 20 | 7/12/17 | 2:30 pm | ▓▓▓ | ▓▓ | | ▓▓▓ ▓ |
| 21 | 7/12/17 | 2:30 pm | ▓▓▓ | ▓▓ | Z | Gaulsburg WV ▓ |
| 22 | 7/13/17 | 1:00pm | ▓▓▓ | ▓▓▓ | Z | Aetna Dist ▓▓ Biker ▓ |
| 23 | 7/13/17 | 1:00pm | ▓▓▓ | ▓▓ | A2 | North Dist of WV R▓▓ |
| 24 | 7/13/17 | 1:00pm | ▓▓▓ A▓ | ▓▓ | A2 | ▓BLE Dist of WV Suite 200 Nashville TN |
| 25 | 7/14/17 | 11:35am | C▓▓ Alonzo Kentucky ▓ | ▓▓ | A3 | ▓▓▓ Pw Big ▓ |

Exhibit NO. 2

# LOG

## Federal Correctional Institution: GILMER

| LEGAL | CERT. | CERTIFIIED # | UNIT TEAM NAME/ SIGNATURE | DELIVERY TIME | DELIVERY DATE | INMATE'S SIGNATURE |
|---|---|---|---|---|---|---|
| ✓ | | | | | | |
| ✓ | | ▬▬▬▬ | Brazel | 3:30pm | 6-28-17 | ▬▬▬▬ |
| ✓ | ✓ | | Brazel | 3:30pm | 6-28-17 | ▬▬▬▬ |
| ✓ | | 20140915 001 | Clayter CT | 4:00 P | 6-30-17 | ▬▬▬▬ |
| ✓ | | | Clayter CT | 4:00 P | 6-30-17 | X ▬▬▬▬ |
| ✓ | ✓ | ▬▬▬▬ | Clark CT | 4:00 pm | 6-30-17 | ▬▬▬▬ |
| ✓ | ✓ | ▬▬▬▬ | Clark CT | 4:00 pm | 6/1/17 | ▬▬▬▬ |
| ✓ | ✓ | | T Deeds AJ Ser | 7:50pm | 7/3/17 | ▬▬▬▬ |
| ✓ | ✓ | 34      13 | J Deeds AJ Ser | 7:38pm | 7/3/17 | ▬▬▬▬ |
| ✓ | ✓ | ▬▬▬▬ | J Deeds AJ Ser | 1:47pm | 7/3/17 | ▬▬▬▬ |
| ✓ | ✓ | 7015 3430 0000 8258 3049 | J Deeds AJ Ser | :50pm | 7/3/17 | X ▬▬▬▬ |
| ✓ | | N/A | S Lu FC | 1:55 | 7/12/17 | ▬▬▬▬ |
| ✓ | | N/A | S Lu FC | 12:30 | 7/10/17 | ▬▬▬▬ |
| ✓ | | N/A | S Lu FC | 3:00 pm | 7/11/17 | ▬▬▬▬ |
| ✓ | | N/A | S Lu FC | 12:30 | 7/10/17 | ▬▬▬▬ |
| ✓ | | N/A | S Lu FC | | | C. ▬▬▬▬ |
| ✓ | | N/A | S Lu FC | 12:30 | 7/10/17 | ▬▬▬▬ |
| ✓ | | N/A | | 15:05 | 7/10/17 | ▬▬▬▬ |
| ✓ | | N/A | L Kirkland | 2:10 pm | 7/2/17 | ▬▬▬▬ |
| ✓ | | N/A | L Kirkland | 2:10 pm | 7/2/17 | ▬▬▬▬ |
| ✓ | | N/A | L Kirkland | 11:00am | 7/13/17 | ▬▬▬▬ |
| ✓ | | N/A 7015 3430 0000 8258 3841 | S. Ramsey | 2:55pm | 7/13/17 | ▬▬▬▬ |
| ✓ | | N/A | S. Ramsey | 3:10pm | 7/13/17 | ▬▬▬▬ |
| ✓ | | 7017 0530 0000 0969 5370 | S. Ramsey | 3:30pm | 7/13/17 | X ▬▬▬▬ |
| ✓ | | | S. Ramsey | 1:00pm | 7/14/17 | X ▬▬▬▬ |

Sensitive But Unclassified

FCI GILMER